UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE WILSON

    Plaintiff,                      Civil Action No. 15-13409
                                       Honorable Stephen J. Murphy, III
       v.                       Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

# REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 15, 16]

    Plaintiff Tyrone Wilson appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits ("SSI") under the Social Security Act (the "Act"). The Honorable Stephen J. Murphy, III, referred this matter for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 2]. After reviewing each party's motion for summary judgment, the Court finds that the decision by the administrative law judge ("ALJ") is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion **[R. 16]** be **GRANTED**;

- Wilson's motion **[R. 15]** be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

I.  **BACKGROUND**

A.  **Wilson's Background and Claimed Disabilities**

Wilson was 23 years old when he submitted his application for disability benefits in March 7, 2013, and alleged a disability onset date of May 9, 2012. [R. 8-2, Tr. 39, 14]. He has past relevant work as a driver helper. [*Id.*, Tr. 42].

Wilson alleged that he was disabled due to right leg pain, upper and lower back pains, and right arm pains. [R. 8-3, Tr. 70]. After a hearing, the ALJ determined that Wilson was not disabled. [R. 8-2, Tr. 14]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1]. Wilson timely filed for judicial review. [R. 1].

B.  **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

2

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

Applying this framework, the ALJ concluded that Wilson was not disabled. At step one, the ALJ determined that Wilson had not engaged in substantial gainful activity since March 2013. [R. 8-2, Tr. 16]. At step two, the ALJ identified severe impairments of status post left femur fracture with open reduction internal fixation (ORIF). [*Id.*]. At step three, the ALJ determined that Wilson's impairment did not meet or medically equal a listed impairment. [*Id.* Tr. 16-17].

Next, the ALJ assessed Wilson's RFC, finding him capable of performing sedentary work[2] with the following limitations:

> [H]e can lift and carry ten pounds occasionally and small docket files frequently. He can sit six hours and stand and/or walk six hours in an eight-hour work day. He requires the option to alternate between sitting and standing at will. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. The claimant requires the use of a handheld assistive device for assistance in standing from a seated positon, standing for more than 5 minutes, and for all ambulation beyond 10 feet, to be held in the dominant upper extremity. He can occasionally push and pull with the left lower extremity. The claimant can have occasional exposure to hazards and extreme cold. Due to pain and the side effects of medication, the claimant is limited to simple, routine, repetitive tasks.

---

[2] "Sedentary work" involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. § 404.1567(a).

4

[*Id.*, Tr. 17]. At the fourth step, the ALJ determined that Wilson did not have the RFC to perform past relevant work. [*Id.*, Tr. 22]. But with the assistance of VE testimony, the ALJ determined at step five that a hypothetical claimant matching Wilson's age, education, work experience and RFC could perform a substantial number of jobs in the national economy, including order clerk (227,100 jobs nationally), telephone clerk (920,000 jobs) and address clerk (71,600 jobs), and was thus not disabled. [*Id.*, Tr. 23].

## II.    ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Wilson argues that the ALJ erroneously gave greater weight to the opinion of state agency consulting physician Muhammed Ahmed, M.D., than to that of Scott Monson, M.D., an orthopedic surgeon, and Cynthia Shelby-Lane, M.D., who both examined Wilson; and that the ALJ erred in assessing Wilson's credibility. The Court disagrees and recommends affirming the decision of the ALJ both for the reasons stated below and because Wilson could be found to have waived his arguments due to the paucity of his analysis. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotations omitted).

### A.

On May 10, 2012, when Wilson was twenty-two years old, he was involved in a motor vehicle accident, which resulted in a fracture to his left femur. [R. 8-7, Tr. 203, 211]. The following day, on May 11, 2012, Wilson received an ORIF of the femur. [*Id.*, Tr. 203]. Soon after, Wilson was able to ambulate with crutches, and he was discharged on May 12 with instructions to follow up with outpatient orthopedic treatment. [*Id.*, Tr. 204].

Wilson was referred to Dr. Shelby-Lane by Disability Determination Services (DDS) for a consultative examination. Dr. Shelby-Lane examined Wilson on July 1, 2013, and observed that Wilson was using a cane and had a left leg splint. [*Id.*, Tr. 234]. She also noted that he had a limp of his left side, was able to get on and off the table slowly, and was not able to tandem walk, heel walk, or toe walk. [*Id.*]. Dr. Shelby-Lane opined that Wilson "would have difficulty with prolonged standing, stooping, squatting, lifting and bending" and that he requires "further follow up and management for this chronic pain condition, status post fracture and injury." [*Id.*]. The ALJ gave Dr. Shelby-Lane's opinion "some weight to the extent it is consistent with a residual functional capacity for sedentary work allowing the use of a cane and the option to sit or stand at will," and noted that the opinion was "vague and imprecise regarding the degree of the claimant's capability, which gives it less probative value." [R. 8-2, Tr. 21].

On July 23, 2012, Wilson began seeing Dr. Nazih Iskander at Metro Pain Clinic with complaints of pain in his left thigh, lower back, upper back, both upper extremities, left lower extremity, right foot, both wrists, and headaches. [R. 8-7, Tr. 242]. Dr. Iskander treated Wilson with various medications, but he was still walking with a cane and continued to complain

7

of back, neck, and knee pain at his last appointment with Dr. Iskander,. [*Id.*, Tr. 245-251].

On July 18, 2013, Dr. Ahmed, the state agency consultant, reviewed Wilson's medical records and opined that Wilson could frequently and occasionally lift ten pounds; stand and/or walk for a total of two hours with a assistive device necessary for ambulation; sit for a total of six hours out of an eight-hour work day; perform most postural activities occasionally, including climbing ramps/stairs, balancing, stooping, kneeling, crouching and crawling; push and pull with limitations in his left lower extremity; and should avoid concentrated exposure to hazards such as machinery and heights.  [R. 8-3, Tr. 75].  The ALJ accorded "significant" weight to this opinion because Dr. Ahmed "reviewed all of the available evidence, and his opinion is based on that evidence . . . furthermore Dr. Ahmed's opinion is consistent with the evidence of ongoing left-sided limp, left leg pain and use of cane for ambulation."  [R. 8-2, Tr. 21].

Lastly, on October 28, 2013, Wilson saw Dr. Monson for an independent medical evaluation, at the request of Wilson's attorney in regard to his no-fault benefits claim.  [R. 8-7, Tr. 331].  During the physical examination, Dr. Monson noted that Wilson walked with a cane and a slow gait, that his left femur, leg length and rotations looked normal and that his

fracture appeared to be clinically healed. [*Id.*, Tr. 333]. Wilson's main complaint was of left knee pain. [*Id.*]. Dr. Monson opined that Wilson femur fracture "has reached maximum medical improvement," but stated Wilson should not perform heavy lifting and required a sit/stand option. [*Id.*, Tr. 334]. The ALJ afforded "great weight" to this opinion because it is "relatively recent" and "is consistent with the results of that examination and his clinical observations regarding [Wilson's] gait, posture, and behaviors." [R. 8-2, Tr. 21].

## B.

The ALJ was required to properly weigh all medical opinions after considering "the examining relationship (if any); the length, nature and extent of the treatment relationship (if any); supportability of the opinion; consistency of the opinion with the record as a whole; the specialization of the source; and any other relevant factors which tend to support or contradict the opinion." *Brumbaugh v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 690, 695 n. 5 (S.D. Ohio 2013) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

Citing 20 C.F.R. 404.1502(c)(1) and *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), Wilson argues that the ALJ erred as a matter of law by giving greater weight to the opinion of Dr. Ahmed, who did not examine

9

Wilson, than to the opinions of Dr. Shelby-Lane and Dr. Monson, who did examine Wilson. [R. 15, PgID 460]. But while the regulations state that more weight will generally be given "to the opinion of a source who has examined you that to the opinion of a source who has not," there is no bright-line rule. 20 C.F.R. § 404.1527(d)(1); *Dragon v. Comm'r of Soc. Sec.*, 470 F.App'x 454, 464 (6th Cir. 2012). Indeed, there are times when non-examining physicians' opinions are properly given the most weight, depending on the "degree to which they provide supporting explanations for their opinions," and the consistency between the opinions and the medical evidence of record. *Dragon*, 470 F.App'x at 464 (citing § 404.1527(d)(3)-(4)). Here, the ALJ sufficiently explained her reasons for affording more weight to the non-examining State agency medical consultant than to the other consultants of record. Further, the Sixth Circuit has squarely rejected Wilson's argument that an ALJ may not rely on a state agency consultant in determining a claimant's RFC. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (finding that an ALJ may properly rely on the opinions of a reviewing State agency medical consultant).

 Factually, Wilson provides no grounds for the finding that the weight the ALJ gave the medical opinions was erroneous, except to say that the ALJ "must have overlooked the recommendations" of Dr. Shelby-Lane and

Dr. Monson. [R. 15, PgID 461]. But in fact the ALJ gave some weight to Dr. Shelby-Lane's opinion that Wilson would "have difficulty with prolonged standing, stooping, squatting, lifting and bending," [R. 8-7, Tr. 234], and crafted a RFC assessment that would allow Wilson to perform only sedentary work requiring a sit/stand option at will with the use of a cane and only occasional balancing, stooping, kneeling, crouching, and crawling; this is consistent with Dr. Shelby-Lane's opinion. [R. 8-2, Tr. 17, 21]. *See* SSR 83-10, 1983 WL 31251, at *5 ("'occasionally' means occurring from very little up to one-third of the time."). The ALJ gave Dr. Monson's opinion great weight that Wilson be given a sit/stand option and no heavy lifting, [R. 8-7, Tr. 334], and assessed Wilson's RFC in a manner that was consistent with that opinion. [R. 8-2, Tr. 17, 21]. Wilson's complaints regarding the ALJ's treatment of the medical opinions is without merit.

## C.

Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. Here, the Court finds that there is no compelling reason to disturb the ALJ's credibility determination in this case.

Wilson argues that "the ALJ's determination that the claimant testimony regarding the intensity, persistence and limiting effects of his symptoms was not based on sound reasoning," and asserts that the ALJ failed to provide specific reasons for denying his claims and relied on boilerplate statements in assessing his credibility. But Wilson cited no evidence in the record that contradicted the ALJ's determination or that would provide the Court will a compelling reason to disturb the ALJ's credibility finding.

The ALJ found that Wilson's statements regarding the "intensity, persistence and limiting effects" of his symptoms are "not entirely credible." [R. 8-2, Tr. 18]. She supported her credibility finding through a detailed and thorough explanation that provided multiple examples of inconsistences between Wilson's testimony and the medical records. First, the ALJ acknowledged that Wilson alleges weakness in both his hands and that during his consultative examination, his grip strength was measured at only fifteen pounds on the right and ten pounds on the left. [*Id.*, Tr. 19]. Wilson also testified that he could lift no more than five pounds. In evaluating Wilson's credibility, the ALJ properly considered whether the medical record supported Wilson's claims. *See* SSR 96-7p, 1996 WL 374186, at *5. The ALJ noted that Wilson's use of a cane to support himself when

rising from a seated position, which requires some grip strength. [R. 8-2, Tr. 19-20]. She observed that there was no medical evidence to support a loss of strength in Wilson's arms and reasonably concluded that Wilson gave poor effort during his consultative examination. [*Id.*, Tr. 19].

Next, the ALJ noted that Wilson is currently not on medication for his pain. [*Id.*, Tr. 20]. An ALJ may properly consider the fact that a claimant takes no medication for an allegedly disabling impairment as one factor relevant to credibility. *See Bradley v. Sec'y HHS*, 862 F.2d 1224, 1227 (6th Cir. 1988). Wilson testified that he was no longer taking medication because it gave him stomach pains; however, the ALJ noted that the treatment records taken by Nazih Iskander, M.D., were inconsistent with Wilson's testimony and stated that Wilson consistently claimed his medications worked well and without any side effects. [R. 8-2, Tr. 20, R. 8-7, Tr. 249-50]. The ALJ further acknowledged that Wilson had difficulty with being able to afford the cost of his medications, but noted that the record was devoid of any evidence that Wilson "sought out low-cost or sliding-scale medical care or gone to the emergency room for treatment, which suggests that his pain has not been as incapacitating as alleged." [*Id.*]. This consideration is consistent with the agency policy stating that if a claimant is unable to afford treatment, he should explore "all possible

13

resources (e.g. clinics, charitable and public assistance agencies, etc.)" in seeking free or subsidized treatment. *See* Social Security Ruling ("SSR") 82-59, *Failure to Follow Prescribed Treatment*, 1982 WL 31384, at *4.

The ALJ also discussed Wilson's work history, pointing to Wilson's testimony that he stopped working in 2010 after a motor vehicle accident and has not sought out work since then; she found that this testimony suggested that "a lack of interest in working is at least partially responsible for his unemployment." [R. 8-2, Tr. 20]. She also noted that Wilson's "past work was performed at the medium exertional level or above, so an inability to return to this work would not necessarily preclude him from performing the reduced range of sedentary work identified in [the ALJ's] decision." [*Id.*]. Lastly, Wilson's activities were discussed by the ALJ and she found that they suggested "that his left leg pain has not been completely debilitating throughout the relevant period." [*Id.*, Tr. 20]. This finding was justified. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (the ALJ "justifiably considered [plaintiff's] ability to conduct daily life activities in the face of his claim of disabling pain").

The ALJ's credibility determination is supported by substantial evidence, and Wilson has not provided a compelling reason to overturn it.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [R. 16] be **GRANTED**; that Wilson's motion [R. 15] be **DENIED**; and that the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 23, 2017

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 23, 2017.

s/Marlena Williams<br>MARLENA WILLIAMS<br>Case Manager